[Cite as *State v. Hawkins*, 2023-Ohio-452.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,            :

                                    No. 111579

    v.                              :

THOMAS D. HAWKINS, IV,                   :

    Defendant-Appellant.           :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 16, 2023

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-21-658565-A

---

***Appearances:***

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Glen Ramdhan, Assistant Prosecuting Attorney, *for appellee*.

Scott J. Friedman, *for appellant*.

SEAN C. GALLAGHER, J.:

{¶ 1} Thomas Hawkins, IV, appeals his conviction for gross sexual imposition for the touching of a nine-year-old child's genital area, resulting in a five-year term of imprisonment on the third-degree felony following the jury trial. For the following reasons, the conviction is affirmed.

{¶ 2} Hawkins was initially indicted on four sex offenses committed against a child under the age of 13 between December 2019 and June 2020: two counts of rape for digital and anal penetration and two counts of gross sexual imposition for the touching of the victim's breasts and vagina. Hawkins was in a six-year relationship with the victim's mother and moved in with her approximately a year before sexually assaulting the child. The victim often referred to Hawkins as her "stepfather." At trial, both the sexual-assault nurse examiner and the intake social worker for the Cuyahoga County Division of Children and Family Services testified with respect to the conversation they had with the victim, in which the victim revealed that Hawkins touched her on her breasts, butt, and vagina on multiple occasions with his hands and penis. There is a dispute as to how many times the sexual assaults occurred as between the two witnesses' recollections of the victim's statements, but both recalled the victim disclosing instances of oral, anal, and digital penetration.

{¶ 3} The victim, ten years old at the time of trial, testified that Hawkins "touched [her] vagina" and legs in her bedroom after removing her clothes. The incident began with Hawkins bringing the victim candy from the kitchen and then getting into bed with the victim. That assault occurred around New Year's in 2020. The victim also related that on other occasions Hawkins placed his penis in her mouth and vagina. After that testimony, the victim drew back from the state's questioning and told the prosecutor that she did not remember what happened. In

response to the state's attempt for clarification, the victim stated that her lack of recall was because she no longer wished to talk about the abuse.

{¶ 4} The state then asked the victim whether a video of her earlier statements would refresh her recollection. Initially, Hawkins objected to any introduction of the victim's recorded statements, even if to refresh her recollection. After objections were raised, the trial court engaged in a memorialized sidebar regarding the ongoing examination.

> THE COURT: Here's my thought: First of all, we have a witness with a very tender age so the Court is trying to give the witness some leeway. However, we also have a defendant who is on trial for his life so we've got to abide by the rules. I will not permit the use of a videotape even if she's using a — if she's looking at the laptop with earphones on. * * *
>
> However, in an effort to be fair and as balanced as I possibly can, I will permit the prosecution to call to her attention that on a prior occasion she said different things. So in other words, this is very similar to when the State has a hostile witness. This is a complete surprise to the State, I would imagine. In any case, I'll permit that, not the introduction of the video, either audio or video, noting the defense's objection, and I will permit vigorous cross-examination and the use of the videotape at that point in your case if you wish.

Tr. 346-347.

{¶ 5} After being provided some latitude with the young witness, but precluded from using the video recording in any manner, the state proceeded to ask a series of yes-or-no questions regarding statements the victim made to the social worker:

> Q. And where did you tell this lady [social worker] that Mr. Hawkins touched you? Did you tell her that he touched you on your vagina?
>
> A. Yes.

\* \* \*

Q. Did you tell this lady that Mr. Hawkins touched you on your boobs?

A. Yes.

Q. Did you tell this lady how he touched you, like what body part? [Victim], did you tell this lady that he touched you with his body parts?

A. Yes.

Q. Did you say it was his private part or a different part of his body?

A. His private part.

Q. Did you tell this lady that he would touch you in your room?

A. Yes.

Q. Did you tell this lady he would touch you in your mom's room?

A. Yes.

Q. Did you tell this lady if your clothes would be on or not?

A. Yes, I did.

Q. What did you tell this lady about your clothes?

A. I told her that they was off.

Q. Who would take off your clothes?

A. Thomas [Hawkins].

\* \* \*

Q. Did you tell this lady about him touching your butt?

A. Yes.

Q. And what did you tell this lady about him touching your butt? Did he put any body parts in your butt?

A. Yes.

Q. [Victim], what body parts did he put in your butt?

A. His private — his area.

Q. When you say "his area," are you referring to his cock like you said before?

A. Yes.

Q. And he put that in your butt?

A. Yes.

Tr. 349-352. Hawkins maintained a continuing objection to that entire line of questioning. Following the remainder of the trial, the jury acquitted Hawkins of both rape counts and the gross sexual imposition relating to the touching of the victim's breasts. The jury, however, found Hawkins guilty of gross sexual imposition for the touching of the victim's vagina.

{¶ 6} There are two assignments of error, both of which focus on evidentiary issues arising at trial. "'Balancing the risks and benefits of the evidence necessarily involves an exercise of judgment * * *.'" *State v. Brinkman*, Slip Opinion No. 2022-Ohio-2550, ¶ 40, quoting *State v. Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651, ¶ 30. Thus, the admissibility of relevant evidence generally rests within the sound discretion of the trial court. *State v. Garrett*, 2022-Ohio-4218, ¶ 155, quoting *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus; *Columbus v. Taylor*, 39 Ohio St.3d 162, 164, 529

N.E.2d 1382 (1988). Appellate courts "'will not reject an exercise of this discretion unless it clearly has been abused and the criminal defendant thereby has suffered material prejudice.'" *State v. Whitaker*, Slip Opinion No. 2022-Ohio-2840, ¶ 87, quoting *State v. Long*, 53 Ohio St.2d 91, 98, 372 N.E.2d 804 (1978).

{¶ 7} In the first assignment of error, Hawkins claims that "the trial court erred when it permitted the state to ask a series of leading questions and elicit inadmissible hearsay from" the victim. After citing the text of Evid.R. 611 (dealing with leading questions), Evid.R. 802 (general hearsay preclusion), and Evid.R. 803(5) (recorded recollection exception to Evid.R. 802), Hawkins claims that

> [i]n this case, the trial court essentially allowed the prosecutor to testify in place of the witness after the alleged victim indicated that she did not recall additional details and she no longer wanted to discuss the allegations. Under the guise of refreshing the witness's recollection, the prosecutor recited [the victim's] prior account of the assault and asked her if she recalled making those statements[.] [(Internal quotations of the transcript omitted.)]
>
> The Supreme Court of Ohio has cautioned that while a party may refresh a witness's recollection by showing the witness a prior statement, the party may not read the statement aloud, have the witness read it aloud, or otherwise place it before the jury. * * * [(Internal citation dealing with Evid.R. 803(5) omitted.)] Here, the prosecutor repeated [the victim's] prior allegations, but phrased them in the form of questions. The trial court allowed the prosecutor to ask these questions, over the defense objection, and thereby permitted inadmissible evidence to be presented to the jury.

The appellate argument does not present analysis of the relevant case authority to permit a more detailed appellate discussion. App.R. 16(A)(7). It merely presents a conclusion, that the evidence was inadmissible. Any discussion at this point in favor of sustaining the assigned error would solely depend on the creation of legal analysis

supporting Hawkins's claims, a responsibility that should not be borne by appellate courts. *See State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 19, quoting *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, ¶ 78 (O'Donnell, J., concurring in part and dissenting in part), and *Carducci v. Regan*, 714 F.2d 171, 177 (D.C.Cir.1983).

{¶ 8} Further, Hawkins largely focuses on the recorded recollection exception to hearsay, providing case citations to the pertinent analysis; however, the transcript fails to demonstrate the applicability of that analysis. The disputed statements were not read into evidence from the video recording, and the video was not shown to the victim under Evid.R. 803(5) as recorded recollections. The trial court expressly precluded the state from introducing or otherwise using any recorded statement during the victim's testimony. There can be no error in the court's application of Evid.R. 803(5).

{¶ 9} There is a matter of appellate procedure to address with respect to Hawkins's Evid.R. 803(5) discussion. Following the close of the briefing schedule, Hawkins filed a notice of additional authority under App.R. 21(I), citing *State v. Harris*, 8th Dist. Cuyahoga No. 110982, 2022-Ohio-4630, ¶ 32, which appears relevant to the discussion of Evid.R. 803(5) and was released after the briefing was completed. App.R. 21(I) provides that "[i]f counsel on oral argument intends to present authorities not cited in the brief, counsel shall, at least five days prior to oral argument, present in writing such authorities to the court and to opposing counsel." Subdivision (I) is meant to provide opposing counsel timely notice of supplemented

arguments in preparation for the upcoming oral argument, but the rule only pertains to appeals in which an oral argument is conducted. *Id.* This appeal was submitted on briefs, with no oral argument being requested by either party and the parties agreeing that the matter could be resolved upon consideration of the briefing alone. App.R. 21(G).

{¶ 10} App.R. 21(G), with respect to submission of the appeal upon briefs, does not contain any provision authorizing the submission of additional authority following the close of the briefing schedule. In the rare situation when additional authority is required after appeals are submitted on briefs through App.R. 21(G), i.e., when intervening, binding authority is released during the pendency of an appeal, that additional authority must be submitted through a motion requesting additional briefing discussing the new authority. It cannot be considered through the filing of a notice of additional authority under App.R. 21(I). This motion practice provides the opposing party a structured opportunity to address the presentation and applicability of additional authority, which is outside the briefing structure to which the parties had originally agreed and, in addition, complies with the dictates of *State v. Tate*, 140 Ohio St.3d 442, 2014-Ohio-3667, 19 N.E.3d 888, ¶ 21, should that additional authority be deemed dispositive. *Id.,* quoting *State v. 1981 Dodge Ram Van*, 36 Ohio St.3d 168, 170, 522 N.E.2d 524 (1988) ("[A]ppellate courts should not decide cases on the basis of a new, unbriefed issue without 'giv[ing] the parties notice of its intention and an opportunity to brief the issue.'").

{¶ 11} Nevertheless, the sole issue in the first assignment of error, given the inapplicability of Evid.R. 803(5), is whether the prosecutor's use of yes-or-no questions regarding what the victim remembered telling the social worker constitutes, per se, reversible error as leading questions or in violation of the rule against hearsay.

{¶ 12} Inasmuch as Hawkins alluded to the questions being leading in nature as contemplated under Evid.R. 611, we cannot conclude, without more, that asking a question that could elicit a yes-or-no response is a leading question as a matter of law. "'A leading question has been defined as a question that suggests a particular answer by the form or substance of the inquiry.'" *State v. Messenger*, 3d Dist. Marion No. 9-09-19, 2010-Ohio-479, ¶ 54, quoting *Haley v. Mason & Dixon Lines, Inc.*, 1st Dist. Hamilton No. C-910221, 1992 Ohio App. LEXIS 4303, 14 (Aug. 26, 1992), and *State v. Bradley*, 4th Dist. Scioto No. 1583, 1987 Ohio App. LEXIS 8824 (Sept. 22, 1987). In order "'[t]o determine what constitutes a leading question, "[t]he whole issue is whether an ordinary man would get the impression that the questioner desired one answer rather than another."'" *Id.*, quoting *Haley* at 15, and McCormick, *Evidence*, Section 6, 17-18 (4th Ed.1992).

{¶ 13} The questions posed to the young victim in this case could have been answered equivocally, or in the affirmative or negative, in part demonstrating that the prosecutor was not suggesting a particular response. Asking a witness whether the witness told another person something specific does not, in and of itself,

constitute a leading question. The witness is free to answer yes, no, or something along the lines of "I don't recall."

{¶ 14} Notwithstanding that observation, and even if we presumed for the sake of discussion that the questions were more leading than not, the trial court has discretion to allow leading questions on direct examination. *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 149, citing *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 138, and *State v. D'Ambrosio*, 67 Ohio St.3d 185, 190, 616 N.E.2d 909 (1993). This extends to the trial court's discretion to permit a prosecutor leeway with the use of leading questions on direct examination of a young witness victim. *State v. Robinson*, 8th Dist. Cuyahoga No. 85207, 2005-Ohio-5132, ¶ 45, citing Staff Notes Evid.R. 611(C) (the rule refers to the use of leading questions when the witness being examined is hostile, and the reference to hostility does not foreclose the use of leading questions based on other considerations, including the handicaps of age, illness, or limited intellect of a witness), *State v. Madden*, 15 Ohio App.3d 130, 472 N.E.2d 1126 (12th Dist.1984), and *State v. Holt*, 17 Ohio St.2d 81, 246 N.E.2d 365 (1969). Hawkins has not presented any arguments differentiating that precedent. App.R. 16(A)(7).

{¶ 15} And finally with respect to the first assignment of error as presented, there is no material prejudice from the introduction of the victim's out-of-court statements through the victim's testimony. Hawkins was acquitted of all but one charge, gross sexual imposition, for the unlawful touching of the victim's vagina. Of the several disputed statements, only one pertained to the conviction. Even though

the challenged questions of the victim elicited hearsay responses, the victim was available for cross-examination regarding her own, direct trial testimony establishing that Hawkins inappropriately touched the victim's genital area, the same fact established by the only pertinent out-of-court statement challenged in this appeal. *See State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, 108 N.E.3d 1, ¶ 128-129 (although availability for cross-examination of the speaker does not cure the hearsay problem, the error in admitting the statement is harmless when there is other evidence of the defendant's guilt). Hawkins claims the error in the introduction of the isolated statement is not harmless because "the series of leading questions" impacted the jury's decision. In other words, according to Hawkins, the whole line of questioning was the cause of the material prejudice.

{¶ 16} Hawkins has not discussed the implications of this procedural history that demonstrates the jury's decision to disregard a majority of the disputed statements he now claims were prejudicial. He instead treated all statements, whether he was acquitted of the charge pertaining to the subject matter of the statement, as demonstrating the material prejudice caused by the introduction of the out-of-court statements. Because the jury acquitted Hawkins of most of the charges dealing with all but one of the disputed statements, we cannot conclude that the introduction of all the disputed testimony caused material prejudice. On the contrary, the jury demonstrated its capacity to disregard a vast majority of the victim's testimony merely relating her own out-of-court statements. The first assignment of error is overruled.

{¶ 17} In the second assignment of error, Hawkins claims the trial court erred in permitting a social worker to testify about out-of-court statements made by the alleged victim. According to Hawkins, the entirety of the social worker's testimony is inadmissible under Evid.R. 803(4) (admissibility of statements made for medical diagnosis or treatment) because the social worker was not a licensed medical professional and, therefore, the victim's statements were not primarily for the purpose of medical diagnosis or treatment. Hawkins did not object to the social worker's testimony at trial and has waived all but plain error. Crim.R. 52(B).

{¶ 18} As has been recognized, "courts have acknowledged the 'dual role' — medical diagnosis/treatment and investigation/gathering of evidence — of social workers who interview a child who may be the victim of sexual abuse." *State v. Fears*, 8th Dist. Cuyahoga No. 104868, 2017-Ohio-6978, ¶ 37, citing *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, 933 N.E.2d 775, ¶ 33. Statements made for the purpose of diagnosis and treatment are admissible under Evid.R. 803(4), even those made to social workers who are not licensed as treating medical professionals. *Id.*, citing *State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, ¶ 46, 875 N.E.2d 944, and *State v. Goza*, 8th Dist. Cuyahoga No. 89032, 2007-Ohio-6837, ¶ 39. "Social workers are oftentimes in the best position to help determine the proper treatment for the minor, which treatment includes determining which home was free of sexual abuse." *Id.*, citing *State v. Durham*, 8th Dist. Cuyahoga No. 84132, 2005-Ohio-202, ¶ 33, and *Presley v. Presley*, 71 Ohio App.3d 34, 39, 593 N.E.2d 17 (8th Dist.1990).

{¶ 19} The record does not support Hawkins's broad claim. The social worker testified that her job as an intake sex-abuse social worker involves doing interviews, assessing for safety, and making referrals for services for the children. Tr. 389:15-23. In doing the forensic interview, from which the social worker related the victim's out-of-court statements at trial, she is making assessments of what the child could benefit from such as counseling services, mental-health assessments, medical assessments, and other types of treatment. Tr. 391:18-23; 402:20-24. The information obtained from a child, which includes details of sexual or physical abuse, is used to help determine if the child needs counseling assessments, mental health assessments, and physical assessments. *Id.*

{¶ 20} The state adequately provided a foundation for at least some of the hearsay related at trial through the social worker's testimony, and Hawkins has not identified any specific statements that violated the permissible scope of Evid.R. 803(4). Since Hawkins has not provided any specificity as to which statements should have been excluded as being beyond the permissible bounds of Evid.R. 803(4), and not all the social worker's testimony would have been inadmissible under prevailing authority, the second assignment of error is overruled. Any analysis pertaining to specific statements from the social worker would solely fall upon this court to discover and then to provide the appropriate legal rationale supporting their exclusion. This is beyond the scope of permissible review and would provide the state with no meaningful opportunity to discuss the issue. *Tate*, 140 Ohio St.3d 442, 2014-Ohio-3667, 19 N.E.3d 888, at ¶ 21, quoting *1981 Dodge*

*Ram Van*, 36 Ohio St.3d at 170, 522 N.E.2d 524 (1988).  The second assignment of error is overruled.

{¶ 21}  Hawkins's conviction is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.  The defendant's conviction having been affirmed, any bail pending appeal is terminated.  Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

MICHELLE J. SHEEHAN, P.J., and
EILEEN T. GALLAGHER, J., CONCUR